UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| CHARLES IVAN KING, | No. C 14-5020 LB |
| Plaintiff, | **ORDER DISMISSING SECOND AMENDED COMPLAINT WITHOUT PREJUDICE** |
| v. | |
| BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY; CALIFORNIA STATE UNIVERSITY; CALIFORNIA MARITIME ACADEMY; JIM BURNS; PETER JACKSON; PAUL NEUMANN; JAMES DALSKE; MARTINA FOWLER, and DOES 1-50, | [Re: ECF No. 7] |
| Defendants. | |

**INTRODUCTION**

On November 13, 2014, the plaintiff Charles Ivan King filed a complaint and an application to proceed *in forma pauperis*. (ECF Nos. 1, 3.)[1] Mr. King consented to the undersigned's jurisdiction on December 1, 2014. (ECF No. 5.) On December 22, 2014, the court granted Mr. King's motion to proceed *in forma pauperis* and dismissed his complaint without prejudice for failure to state a claim that is plausible on its face. (Order, ECF No. 6.) The court gave Mr. King leave to file an amended complaint with instructions to "identify specific acts and say why (in his view) they amount to

---

[1] Record citations are to documents in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

Order Dismissing 2nd Am. Compl. 14-cv-5020 LB

constitutional violations." (*Id.* at 2.) Mr. King filed his first amended complaint ("FAC") on January 21, 2015. (ECF No. 7.) On April 2, 2015, the court dismissed the FAC without prejudice. The court found that Mr. King had failed to state a claim under Title VI of the Civil Rights Act of 1964, and that Mr. King also had not set out a viable claim for breach of contract. (Order, ECF No. 11.) The court granted him until May 4, 2015 to file another amended complaint, and instructed him that he "must focus on stating specific and succinct facts that support his legal conclusions." Mr. King filed a second amended complaint ("SAC") on May 4, 2015. (ECF No. 12.) For the reasons stated below, the court dismisses the SAC without prejudice.

**STATEMENT**

The following facts are those alleged in the SAC as well as those contained in the supporting documentation accompanying the SAC. Mr. King was accepted and enrolled in an on-line Masters of Science graduate program at the California Maritime Academy (the "Academy') in the Fall of 2011. The Academy is part of the California State University system. (ECF 12-2.) Mr. King asserts that he immediately ran into problems concerning: (1) the disbursement of financial aid; (2) issues with the two computer systems the Academy used as part of the program -- Moodle and Outlook;[2] and (3) the "capricious attitudes" of the dean of the school, Dean Burns, and two of his professors.

In terms of the financial aid, Mr. King acknowledges that the Academy awarded him financial aid covering his tuition and fees. (SAC, ECF No. 12 at 2:17-28.) Mr. King's complaint regarding financial aid is limited to a request covering "additional costs," specifically his request for additional aid to cover the cost of a computer and other tools. (*Id.*) Mr. King agrees that the Academy did grant this aid ultimately, but that it was not awarded to him until the end of the semester. The documents provided by Mr. King indicate that his computer request ran into both some procedural and substantive issues. First, there appears to have been confusion about whether Mr. King had provided all of the necessary information. *See, e.g.* (ECF No. 12-1, p. 19 ("MPN" missing from loan file).) Second, the financial aid office informed Mr. King in November of 2011 that there would be a delay in processing his request as they were in the middle of a large time-sensitive project for students on a cruise.

---

[2] Moodle was the system used for course assignments and Outlook was the e-mail system.

Mr. King's aid request for a computer additionally appears to have been out of the ordinary. The Academy's policy on aid for computers was to add to the financial aid package the cost of one computer for the duration of the program. Mr. King asked instead for funding both to repair his current computer and his printer, and also to purchase an I-Pad. (ECF No. 12-1, p. 25.). When Mr. King was advised that his request was not consistent with Academy policy, Mr. King asked that his request be considered by someone of higher authority. The Academy promptly sent his request to the person in charge of financial aid, and the next day, on December 8, 2011 the additional aid was approved and added to his account. (*Id.*) By the start of the second semester Mr. King had acquired the computer necessary to participate in the program.

Mr. King had ongoing problems with his e-mail box. The SAC notes that the Academy's graduate coordinator, Kathleen Arnold, intervened several times on his behalf to help him resolve this problem. Mr. King also met twice with the Academy help-desk personnel to attempt to resolve the problem. (SAC, p. 3.) Ms. Arnold and the Academy IT staff informed Mr. King on several occasions that the problem was a result of his e-mail box being over-full. This information is consistent with the computer-generated information sent by the e-mail system. (ECF No. 12-1, pp. 1-10.)

Finally, Mr. King's SAC asserts problems with Dean Burns, and also with several of Mr. King's professors, especially as it related to his appeal of some poor grades. (SAC pp. 2-3). Mr. King's academic experience in the graduate program appears to have been rocky from the start. California State University policy requires that in order to successfully earn their degree, students in a Master's degree program must achieve a minimum 3.0 GPA throughout the program, and also receive a grade of at least a "B" in each individual course. (ECF 12-1, p. 34.)

Mr. King asserts that his lack of routine access to a computer during the first semester led to his inability to participate fully in the computer forums. Mr. King reportedly reached out to two of his professors, Professor Jackson and Professor Kamdar, to inform them of his computer access issues. (SAC p.2.) According to Mr. King, Professor Kamdar took note of Mr. King's computer access issues, but ultimately Mr. King received a grade of "C-" in that class. (*see* ECF No. 12-1, pp. 37-38 (Prof. Kamdar alerting Mr. King to upcoming assignments).) Professor Jackson allegedly did not

respond, and Mr. King received a failing grade in that class.

Mr. King alleges that the Academy did not provide him guidance on the method of appealing his grade. The procedures for appealing a grade are on the Academy's website. There is some evidence in the attachments to the SAC that the Academy did provide Mr. King with a copy of the policy, but that Mr. King did not submit the grade change request until May, 2013, which the Academy asserts was not timely. (ECF No. 12-1. p. 16.)

During the second semester, Mr. King was invited to a conference in New Mexico to present a paper. (SAC p.4.) There may be some relationship between this trip and the allegation in the same paragraph of the complaint that one of Mr. King's professors failed to grade a final paper submitted by Mr. King, leading to a final grade of "C" in that class. (*Id.*) There is some evidence in the record that Mr. King had "prolonged absences" from his courses and that he turned in assignments late, and missed turning in other assignments. (ECF 12-1, p. 16.)

In May of 2012, Dean Burns contacted Mr. King and asked him to come in to campus to discuss his poor performance in the first semester. Dean Burns asked Mr. King to sign a "contract" that he would earn no grade less than a "A" to remain in the program. Dean Burns provided Mr. King with a performance agreement which indicates that, based on the California State University policy, Mr. King would need to retake three courses in which he earned less than a "B" and that also to bring his average up to a 3.0 GPA he would have to earn an "A" in his remaining course-work. (*Id.*) Mr. King at one point agreed to abide by the terms of the performance agreement provided him by Dean Burns.  Although Mr. King's grades improved dramatically, he did not receive "A's" in his courses, nor did he retake for a better grade the courses in which he did poorly, and so his GPA remained below the required 3.0.

Mr. King refused to agree to the Performance Agreement he was given in the Fall of 2012. When Mr. King would not sign the new agreement despite his GPA being below the required 3.0, he was suspended from the program.  Mr. King was notified of his suspension in December of 2012. Mr. King has not been terminated from the program. Mr. King requested that because his academic problems assertedly were the result of: computer problems; a "misunderstanding on the topic" of his project for two of his classes; and a missing grade for a paper he asserts he submitted but which

apparently was not received, that the Academy allow him to retroactively be able to take "incompletes" in those classes to fix the coursework problems. It is Academy policy that a student request an "incomplete" before the end of the semester for the class in which he wishes an "incomplete." (ECF No. 12-1, p.33.)  Mr. King did not adhere to this policy. In 2013, Dean Burns advised Mr. King that were he to retake his two courses with the lowest grades and attain an overall GPA of 3.0 he could apply to be re-instated in the program.  (ECF No. 12-1.)

## ANALYSIS

### I.  *SUA SPONTE* SCREENING — 28 U.S.C. § 1915(e)(2)

Notwithstanding payment of any filing fee or portion thereof, a complaint filed by any person proceeding *in forma pauperis* under 28 U.S.C. § 1915(a) is subject to a mandatory and *sua sponte* review and dismissal by the court to the extent that it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *Calhoun v. Stahl*, 254 F.3d 845, 845 (9th Cir. 2001); *Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc). Section 1915(e)(2) mandates that the court reviewing an *in forma pauperis* complaint make and rule on its own motion to dismiss before directing the United States Marshal to serve the complaint pursuant to Federal Rule of Civil Procedure 4(c)(2). *Lopez*, 203 F.3d at 1127; *see also Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (noting that the language of § 1915(e)(2)(B)(ii) parallels the language of Federal Rule of Civil Procedure 12(b)(6)). As the United States Supreme Court has explained, "[the *in forma pauperis* statute] is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit." *Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989).

"Frivolousness" within the meaning of the *in forma pauperis* standard of 28 U.S.C. § 1915 and failure to state a claim under Rule 12(b)(6) are distinct concepts. A complaint is "frivolous" where it lacks an arguable basis either in law or in fact. *Id*. at 325 (definition of "frivolous . . . embraces not only the arguable legal conclusion, but also the fanciful factual allegation"). When determining whether to dismiss a complaint as "frivolous" under 28 U.S.C. § 1915(e)(2)(B)(i), the court has "'the unusual power to pierce the veil of the complaint's factual allegations,'" meaning that the court "is

1    not bound, as it usually is when making a determination based solely on the pleadings, to accept
2    without question the truth of the plaintiff's allegations." *Denton v. Hernandez*, 504 U.S. 25, 32
3    (1992) (quoting *Nietzke*, 490 U.S. at 327). Further, the Ninth Circuit has expressly held that
4    frivolous litigation "is not limited to cases in which a legal claim is entirely without merit . . . . [A]
5    person with a measured legitimate claim may cross the line into frivolous litigation by asserting facts
6    that are grossly exaggerated or totally false." *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047,
7    1060–61 (9th Cir. 2007).

8    The court may also dismiss a complaint *sua sponte* under Rule 12(b)(6). *Sparling v. Hoffman
9    Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988). Under Rule 12(b)(6), a district court must dismiss a
10   complaint if it fails to state a claim upon which relief can be granted. Rule 8(a)(2) requires that a
11   complaint include a "short and plain statement" showing the plaintiff is entitled to relief. "To survive
12   a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a
13   claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949
14   (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).
15   The complaint need not contain detailed factual allegations, but the plaintiff must "provide the
16   'grounds' of his 'entitle[ment]' to relief," which "requires more than labels and conclusions"; a mere
17   "formulaic recitation of the elements of a cause of action" is insufficient. *Iqbal*, 129 S.Ct. at 1949;
18   *see also Twombly*, 550 U.S. at 555.

19   In determining whether to dismiss a complaint under Rule 12(b)(6), the court is ordinarily
20   limited to the face of the complaint. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980
21   (9th Cir. 2002). The court may consider documents attached to the complaint. *See Informix
22   Software, Inc. v. Oracle Corp.*, 927 F. Supp. 1283, 1285 (N.D. Cal. 1996). The factual allegations
23   pled in the complaint must be taken as true and reasonable inferences drawn from them must be
24   construed in favor of the plaintiff. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir.
25   1996). Nonetheless, the court cannot assume that "the [plaintiff] can prove facts which [he or she]
26   has not alleged." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S.
27   519, 526 (1983). "Nor is the court required to accept as true allegations that are merely conclusory,
28   unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266

F.3d 979, 988 (9th Cir. 2001) (citation omitted).

When dismissing a case for failure to state a claim, the Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez*, 203 F.3d at 1130.

## II. THE SECOND AMENDED COMPLAINT FAILS TO STATE A CLAIM

Unlike his FAC, where Mr. King set out separate claims, the current complaint does not list specific claims, although it alleges generally Fourteenth Amendment violations by officials of the California Maritime Academy and their arbitrary and capricious action to suspend Mr. King. (FAC ECF No. 12 at 2.); *see also Id.*, at 6-7 (alleging a due process violation for suspension and expulsion.) The last order of the court instructed Mr. King to state specific facts which support his legal conclusions, and Mr. King has provided the court with additional facts. It may be that Mr. King is unaware that an amended complaint supersedes in its entirety the prior complaint, and perhaps he intended the SAC to be read in conjunction with the FAC. *See Valadez-Lopez v. Chertoff*, 656 F.3d 344, 346 (9th Cir. 2011) (amended complaint entirely supersedes prior complaint unless amended complaint clearly incorporates prior pleading by reference.) Because the FAC alleges specific claims where the SAC does not, the court assumes (for the purposes of this Order) that the SAC still alleges the charges in the FAC: (1) violations of Title VI; and (2) contract violations. (SAC, ECF No. 12 at 7-11.) The court also examines the due process claim alleged in the SAC.

### A. Claim Under Title VI

Mr. King acknowledges that the Academy did grant him financial aid covering his tuition and fees. (SAC, ECF No. 12 at 2:17-28.) His complaint regarding financial aid is limited to his request for additional aid to cover the cost of a computer and other tools. (*Id.*) Mr. King further acknowledges that the Academy ultimately did grant this aid, but that it was not awarded to him until the end of the semester.  Mr. King alleges that this delay in timely granting him the additional aid was in violation of Title VI of the Civil Rights Act of 1964. (SAC, ECF No. 7 at 6.)

To state a claim under Title VI, "a plaintiff must allege that (1) the entity involved is engaging in racial discrimination; and (2) the entity involved is receiving federal financial assistance." *Fobbs v.*

*Holy Cross Health Sys. Corp.*, 29 F.3d 1439, 1447 (9th Cir. 1994). "Unlike claims under the Equal Protection Clause which must plead intentional discrimination, Title VI claims need only allege that the defendant is engaging in discrimination, although a showing of intent is necessary at trial." *Aguirre v. San Leandro Police Dept.*, No. 10-04364 CW, 2011 WL 738292 at *3 (N.D. Cal. Feb. 22, 2011) (citing *Monteiro v. Tempe Union High School Dist.*, 158 F.3d 1022, 1026 (9th Cir. 1998)).

In the SAC Mr. King still does not allege any facts that indicate that the he was denied financial aid *because of* his race. In fact, Mr. King ponders in the complaint whether the delay was "by design" or "simple neglect." (SAC, ECF No. 7 at 6.) Mr. King has not presented the court with any factual basis relating the delay in financial aid to his race.[3] To meet the *Iqbal-Twombly* pleading standard. Mr. King would have had to provide plausible factual grounds to explain *why he believes* that the California Maritime Academy is engaging in racial discrimination. *See Iqbal*, 129 S.Ct. at 1949; *see also Twombly*, 550 U.S. at 570. Despite an additional opportunity and direction from the court to specifically provide any connection between the delay in aid and his race, Mr. King has not done so.[4]

**B. Claims Relating to his Placement on Academic Probation**

Mr. King again alleges mistreatment by Dean Burns related to the performance contract requiring that he make no grade less than an "A" in the remaining semesters of the program. (SAC, ECF No. 12 at 9:20-28.) Unlike the FAC, Mr. King has not tied his concerns about the contract to a specific legal claim. Therefore, the court is not certain whether Mr. King is still alleging breach of contract, and breach of the covenant of good faith and fair dealing, or that the contract was unconscionable, as he had alleged in his FAC. Nonetheless, even construing the complaint liberally

---

[3] In his FAC Mr. King stated that he "identifies as Negro or African American and believes the impact was discriminatory along the line of race, color, or national origin" (FAC, ECF No. 7 at 9). By contrast, the SAC contains no reference at all to Mr. King's race or that he believes that actions by the Academy were racially motivated.

[4] Mr. King indicates that he called the university financial aid office to inquire about loan disbursements to other graduate students perhaps to seek evidence of whether he had been subjected to disparate treatment. Mr. King received no information from the Academy financial aid office other than what was in his own file. Mr. King has not, however, identified any other graduate student he believes received more favorable treatment.

in favor of the Mr. King with those causes of action in mind, the court finds that Mr. King has failed to state a cognizable contract claim in SAC. The court again also notes that, absent a viable federal claim, the Mr. King cannot bring a stand-alone state-law claim for breach of contract in federal court.

As it relates to Dean Burns' requirement that Mr. King enter into a performance agreement, Mr. King alleges that the agreement was "unfair" but he has not made any specific allegations that the performance standards were in any way related to his race. In fact, Mr. King posits that his difficult educational experience may have been the result of some animosity from students and professors relating to his attempted development of two of his own innovative projects, rather than as a result of racial animosity. The court cannot assume therefore that Mr. King is attempting to bring a claim of race discrimination related to the performance contract.

**C. Due Process Claim**

Mr. King also alleges that the Academy abrogated his due process rights in violation of the Fourteenth Amendment by suspending him. Mr. King appears to be alleging both procedural and substantive due process violations.

In the context of school suspensions, the Supreme Court has held that less process is due a student who has been suspended for academic reasons than is due a student who is suspended for disciplinary reasons. *See Bd. of Curators of the Univ. of Missouri. v. Horowitz*, 435 U.S. 78. In *Horowitz*, the Supreme Court found that there was no due process violation where the student was fully informed of faculty dissatisfaction with her progress and she also was informed of the threat to her continued enrollment. The Supreme Court held that in this scenario, procedural due process did not require the institution to have held a formal hearing. *Id. (*distinguishing academic suspension from the disciplinary suspension due process requirements of *Goss v. Lopez*, 419 U.S. 565 (1975).) *See also Salus v. Nevada ex rel. Bd. of Regents of Nevada Sys. of Higher Educ.*, 2011 WL 4828821, at \*3 (D. Nev. Oct. 10, 2011). Mr. King cites to the case of *Dixon v. Alabama State Board of Education*, 294 F.2d 150 (5th Cir. 1961). The *Dixon* case, however, like *Goss*, concerned a disciplinary, not an academic, suspension.

As alleged in the SAC and in the attachments, the record currently before the court indicates that

the Academy gave Mr. King adequate information about concerns regarding his academic performance, both informally and formally, and that he was advised of the ultimate potential consequences of not dramatically improving his performance. The record before the court is less clear on whether Mr. King was informed of his suspension before it was imposed.

Whether a plaintiff may sustain a claim for substantive due process for an academic suspension is not established. Nonetheless, in several cases with factual scenarios close to those here, courts have found no substantive due process violation.

In *Shocrylas v. Worcester State College*, 2009 WL 3298126 (D. Mass. 2009), the court concluded that a graduate student failed to demonstrate a substantive due process violation where the student was dismissed from a graduate program after she received poor grades in a clinical practice class. The plaintiff in *Shocrylas* alleged that the poor grades she received were the result of personal animus. The court noted that it was not a simple task to determine where professional judgment left off and personal animus began. Nonetheless, the court found that the record did not suggest to the court a substantial departure from accepted academic norms and thus could not form the basis of a procedural due process claim.

Similarly, the court in *Davis v. George Mason University*, 395 F. Supp. 2d 331 (E.D. Va. 2005),[5] held that the university's academic dismissal of the student for receiving two failing grades in required courses did not violate the student's substantive due process rights, where the university notified the student of its decision and the reasons for it.

Here Mr. King has alleged that the Dean's actions were arbitrary and capricious. Such allegations could possibly sustain a claim for a procedural due process claim. To do so however, Mr. King would need to plead more, namely specifically how the Academy's decision was against the Academy's own policies and guidelines, or was a substantial departure from academic norms. *Id*. at 337.

## CONCLUSION

The court acknowledges that each opportunity Mr. King has put substantial effort into revising his complaints, and that, as Mr. King references, this experience has been an emotional one for him.

---

[5] *Aff'd without opinion*, 193 Fed. Appx. 248 (4th Cir. 2006),

1  The court has granted Mr. King two opportunities to amend his complaint to state claims supported
2  by specific and succinct facts that support his legal conclusions. Mr. King, despite these multiple
3  opportunities, has not done so. The court therefore must dismiss this complaint. Mr. King notes that
4  more time and investigation might allow him to allege a plausible claim. (SAC, ECF No. 12 at 10-
5  11.)  He thus asks that any dismissal be without prejudice to afford him "more time and information
6  upon which to present a legal claim." (*Id*. at 11.) The court grants that request and dismisses the
7  complaint without prejudice.

**IT IS SO ORDERED.**

Dated: June \_\_\_\_, 2015

_____
LAUREL BEELER
United States Magistrate Judge